IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KEN JONES,

        Plaintiff,

vs.                                    No. CIV 06-0591 JB/LCS

LINCOLN COUNTY COMMISSIONERS;
RICK SIMPSON; TOM BATTIN; EARL HOBBS;
MAURY ST. JOHN; EILEEN LOVELACE in their
official capacities; LINCOLN COUNTY SHERIFF, RICK VIRDEN;
and former Lincoln County Sheriff, TOM SULLIVAN,
in their official and individual capacities,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion for Qualified Immunity and Stay of Proceedings, filed April 12, 2007 (Doc. 16)("Motion for Immunity"). The Court held a hearing on the motion on June 1, 2007. The primary issue is whether the Court should grant Defendants Rick Virden and Tom Sullivan summary judgment on Plaintiff Ken Jones' claims against them because qualified immunity bars those claims. Because the Court believes that genuine questions of disputed fact exist regarding whether Virden and Sullivan violated Jones' constitutional rights and that the law protecting those rights was clearly established at the time the Defendants took their actions against Jones, the Court will deny the motion.

## FACTUAL BACKGROUND

Jones was an employee of Lincoln County, New Mexico as a Deputy Sheriff with the Lincoln County Sheriff's Department from 1990 to 2005. See Motion for Immunity ¶ 1, at 3; Response to Defendants Motion for Qualified Immunity and Stay of Proceedings ¶ 1, at 2, filed May

10, 2007 (Doc. 19)("Jones' Response").  For the majority of the period during which Jones worked for the Sheriff's Department, Sullivan was County Sheriff and Jones worked under Sullivan's supervision.  See Motion for Immunity at 1; Jones' Response at 1.  Sullivan's tenure as Sheriff expired on December 31, 2004.  See Motion for Immunity at 1; Jones' Response at 1.

Before March 2004, Jones announced his candidacy for the Democratic party's nomination in the November 2004 general election for Lincoln County Sheriff.  See Motion for Immunity at 2; Jones' Response at 1.  Virden, then Lincoln County Undersheriff, defeated Jones in the March 2004 primary election and proceeded to win the general election in November 2004.  See Motion for Immunity at 2; Jones' Response at 1.  Jones was not on the ballot for the general election in November 2004.  See Motion for Immunity at 2; Jones' Response at 1.

Before the general election in November 2004, an unknown person filed a complaint alleging that Virden was in violation of the Hatch Act, 18 U.S.C. §§ 594-611, because he was an official of an agency receiving federal funds.  See Jones' Response, Exhibit 2, Affidavit of Kenneth D. Jones ¶ 4, at 1 (executed May 9, 2007)("Jones Affidavit").  As a result of the complaint, Virden was forced to resign from his position as Undersheriff in the period preceding the general election.  See id. ¶ 5, at 1.

On September 8, 2004, Jones attended a mandatory Sheriff's Department staff meeting at which he denied rumors that he had reported Virden to authorities for violating the Hatch Act in the course of his campaign.  See Jones' Response, Exhibit 1, Affidavit of Peggy Fisher ¶ 9, at 1(execution undated); Jones Affidavit ¶ 10, at 2.  In response to Jones' statements at the meeting, Sullivan composed a memorandum in which he denied being aware of the rumors to which Jones referred at the staff meeting and characterized Jones' remarks as an "outburst" and "highly

unprofessional." Motion for Immunity, Exhibit A, Memorandum from Sheriff Tom Sullivan to Sgt. Ken Jones (dated September 8, 2004). Sullivan asserted that Jones' "bitterness and disdain toward this department is obvious and is affecting [his] subordinates." Id. Sullivan offered that "[p]erhaps [he and Jones] should discuss this situation at [Jones'] convenience." Id.

Jones submitted a written response to Sullivan's memorandum on October 6, 2004. See Motion for Immunity, Exhibit B, Memorandum from Sgt. Ken Jones to Sheriff Tom Sullivan (dated October 6, 2004). In his response, Jones alleged that he had been ostracized, criticized, and otherwise treated unfairly within the department since announcing his intention to run against Virden for the position of Sheriff. See id. Jones conceded that "I probably do appear 'disdainful and bitter' at times," and explained that he "sometimes feel[s] overwhelmed by the burden to keep the mission of our department first at hand, and not allow post-election snips and snide comments to override my better judgment, and which forces me to be defensive more than I care to be." Id. at 2.

The following day, on October 7, 2004, Sullivan issued a written reply to Jones' response. See Motion for Immunity, Exhibit C, Memorandum from Sheriff Tom Sullivan to Sgt. Ken Jones (dated October 7, 2004)("Sullivan's October 7, 2004 Letter"). In his October 7, 2004 letter, Sullivan explained that he purposely did not interact with Jones during the election process so as not to have any criticisms misconstrued as retaliation for running against Virden, the candidate that Sullivan supported. See id. at 1. Sullivan stated that neither he nor Virden had "an ax to grind" with Jones or was "out to 'get [him],'" and that he did "not have a problem with [Jones'] job performance other than the fact that it appears you spend too much time in dispatch, rather than being out in the county with your subordinates." Id. at 2. Sullivan also recommended that Jones "sit down with Mr. Virden,

who is obviously going to be the next Sheriff, and iron out any difference you may have with him." Id.

On December 17, 2004, Virden received a letter from a citizen, who knew Jones personally, describing an encounter the citizen had with Jones at a local restaurant.  See Motion for Immunity, Exhibit D, Letter from Redacted Sender to Undersheriff Rick Verdon [sic] (dated December 17, 2004).  The letter alleged that Jones was aggressive and confrontational while inquiring into a dispute between the citizen and a waitress at the restaurant.  See id. at 1.  Virden forwarded a copy of the letter to Jones and requested that Jones submit a written response to the citizen's allegations. See Motion for Immunity, Exhibit D, Memorandum from R.E. Virden to Sgt. Ken Jones (dated December 21, 2004).  After investigating the incident at the restaurant, Virden sent the citizen a letter indicating that, based on accounts from other law enforcement officers and restaurant patrons, "Sgt. Jones handled the situation as well as possible."  Motion for Immunity, Exhibit E, Letter from R.E. Virden to Redacted Recipient (dated January 25, 2005).

On March 29, 2005, Lincoln County Chief Deputy Patrick O'Brien hand-delivered a letter to Jones in which he alleged that Jones had disregarded O'Brien's directive to process a request that Jones was filing -- requesting that one of Jones' subordinates be permitted to use vacation and sick time while on leave on probation -- through Jones' chain of command.  See Motion for Immunity, Exhibit F, Letter from Patrick J. O'Brien to Ken Jones (dated March 28, 2005).  O'Brien asserted that Jones violated Sheriff's Office and County Policy when he "didn't just go around me to the Sheriff who is the director of this department," but contacted the County Manager, Tom Stewart. Id.  O'Brien requested that Jones compose a letter in response to the accusations of insubordination. See id.

Jones submitted a written response on October 29, 2005 denying any insubordination, asserting that he followed his chain of command, and noting that he had submitted the letter containing his request to O'Brien, his immediate supervisor.  See Motion for Immunity, Exhibit G, Letter from Deputy Sergeant Ken Jones to Chief Deputy Patrick J. O'Brien (dated March 29, 2005). Jones admitted that he had also contacted Stewart, but explained that he did so merely to inform him that his request was proceeding up the chain of command and would be forthcoming for his consideration.  See id.  O'Brien issued Jones a formal letter of reprimand for insubordination and acting outside the chain of command on March 31, 2005; the letter of reprimand was placed in Jones' personnel file.  See Motion for Immunity, Exhibit H, Letter from Patrick J. O'Brien to Ken Jones (dated March 31, 2005).  Jones did not lose any pay or benefits in association with the March 31, 2005 letter of reprimand.  See Motion for Immunity ¶ 10, at 4; Jones' Response ¶ 10, at 3-4.

On or about June 22, 2005, Virden issued a letter to Jones requesting a response as to why Jones had not interviewed a particular witness in a recently completed investigation involving criminal abuse of a horse.  See Motion for Immunity, Exhibit I, Letter from R.E. Virden to Sgt. Jones (dated June 22, 2005).  The letter explained that, during the course of the investigation, Virden had informed Jones that an incarcerated witness had expressed a willingness to discuss the horse-abuse incident, and directed Jones to interview the witness; Virden noted that, when he received a copy of Jones' report on the incident, the report did not indicate that Jones interviewed the witness. See id.  Virden directed Jones to submit a written response explaining why he had not interviewed the witness.  See id.

Jones responded that he had already begun to compose his report on the horse-abuse investigation when Virden informed him that the witness had expressed interest in talking to

investigators.  See Motion for Immunity, Exhibit J, Letter from Sgt. Jones to R.E. Virden (dated June 28, 2005).  Jones stated that he did not recall ever having been ordered to interview the witness.  See id.  Jones explained that, earlier on the day that Virden had referenced the witness' willingness to speak to investigators, he had conferred with another officer conducting a related investigation and confirmed that the same witness was still unwilling to provide information.  See id.  Jones, who was scheduled to begin a vacation at the conclusion of his shift on that day, also indicated that he had been having problems generating reports on the Sheriff Department's new computer system, that he had several reports to complete before his shift was complete, and that he had not received approval to remain past the end of his shift to complete the reports.  See id.  Finally, Jones asserted that he did not have the equipment necessary to record the interview in accordance with a directive that O'Brien had issued.  See id.

On July 1, 2005, Virden issued Jones a notice that he intended to suspend him for thirty days. See Motion for Immunity, Exhibit K, Letter from R.E. Virden to Sgt. Ken Jones (dated July 1, 2005).  Virden stated that it was Jones' responsibility to interview the witness before going on vacation, and concluded that Jones "intentionally and willfully failed to follow a direct order."  Id. The notice informed Jones that, pursuant to the collective bargaining agreement, he had ten days to appeal the proposed suspension, that an appeal would be resolved through arbitration, and that each party would bear one-half the cost of the arbitration.  See id.  Jones initialed the notice to indicate that he had received it on July 1, 2005 and included a handwritten notation that he intended to appeal Virden's decision.  See id.  Jones did not appeal the proposed suspension.  See Motion for Immunity ¶ 14, at 4; Jones' Response ¶ 14, at 4.

On July 8, 2005, Jones sent Virden a letter alleging that, "[s]ince the time [he] decided to run

for election, [he had] been subjected to harassment in the form of several critical written reprimands, and made to feel . . . a dysfunctional employee, supervisor, and person."  Motion for Immunity, Exhibit L, Letter from Sgt. Kenneth D. Jones to Sheriff R.E. Virden (dated July 8, 2005).  Jones indicated that he could not afford to bring the matter of his suspension to arbitration, and stated that his suspension, "along with the harassment and disassociation from any constructive process within this department have lead [sic] me to believe that I am being constructively discharged."  Id.  Jones informed Virden that he had spoken to his attorney and that he was tendering his resignation.  See id.

Virden responded to Jones' resignation in a letter dated July 11, 2005.  See Motion for Immunity, Exhibit M, Letter from R.E. Virden to Sgt. Ken Jones (dated July 11, 2005).  In the July 11, 2005 letter, Virden expressed his regret that Jones had chosen to resign from his position and asserted that the reprimands that Jones had received were intended to improve his performance, not to harass him or make him feel dysfunctional.  See id.  Virden contested Jones' conclusion that he had been constructively discharged and explained that, pursuant to his obligations under the collective bargaining agreement, Virden was required to accept Jones' resignation and waiver of the appellate process.  See id.

## PROCEDURAL BACKGROUND

On July 3, 2006, Jones filed a Complaint asserting claims based on alleged violations of his First and Fourteenth Amendments rights and New Mexico law.  See Complaint at 1, filed July 3, 2006 (Doc. 1).  Specifically, Jones' Complaint asserts four claims: (i) a claim for constructive discharge under 42 U.S.C. § 1983; (ii) a claim for unlawful retaliation under 42 U.S.C. § 1983; (iii) a claim for violation of equal protection under 42 U.S.C. § 1983; and (iv) a claim for breach of the

-7-

covenant of good faith and fair dealing under New Mexico law.  See id. at 3, 9, 10, 11.

Virden and Sullivan assert that they are entitled to qualified immunity with respect to Jones'

claims.  See Motion for Immunity at 3.  Virden and Sullivan contend that all discovery in this case

should be stayed pending the Court's resolution of this motion.  See id. at 9.

In his written response to Virden's and Sullivan's motion, Jones concedes that "there is no

factual basis to allege equal protection as [Jones] is not a member of a protected class," and that

"New Mexico law does not recognize a breach of covenant of good faith and fair dealing in the

context of an implied contract of employment claim."  Jones' Response at 13.  Accordingly, Jones

acknowledges that the Court should dismiss Counts III and IV of his Complaint.  See id. at 14.

## STANDARD FOR DECIDING SUMMARY JUDGMENT MOTIONS

Summary judgment shall be granted "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law."  Fed. R. Civ. P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The

opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth

specific facts showing that there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986)(citing Fed. R. Civ. P. 56(e)).  An issue of fact is "genuine" if the evidence

is significantly probative or more than merely colorable such that a jury could reasonably return a

verdict for the non-moving party.  Id. at 249-50 (citations omitted).  Mere assertions or conjecture

as to factual disputes are not enough to survive summary judgment.  See Branson v. Price River Coal

Co., 853 F.2d 768, 771-72 (10th Cir. 1988).

The party seeking summary judgment has an "initial burden to show that there is an absence

of evidence to support the nonmoving party's case."  Munoz v. St. Mary-Corwin Hosp., 221 F.3d
1160, 1164 (10th Cir. 2000)(quoting Thomas v. IBM, 48 F.3d 478, 484 (10th Cir. 1995))(internal
quotations omitted).  Upon meeting that burden, the non-moving party must "identify specific facts
that show the existence of a genuine issue of material fact."  Munoz v. St. Mary-Corwin Hosp., 221
F.3d at 1164 (citations and internal quotations omitted).  "The party opposing the motion must
present sufficient evidence in specific, factual form for a jury to return a verdict in that party's
favor."  Id. (citations and internal quotations omitted).

The mere existence of a scintilla of evidence in support of the plaintiff's position is not
sufficient; there must be evidence on which the fact finder could reasonably find for the plaintiff.
See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  The non-moving party must "go beyond the
pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and
admissions on file, designate specific facts showing that there is a genuine issue for trial."  Celotex
Corp. v. Catrett, 477 U.S. at 324 (internal quotations omitted).  "In a response to a motion for
summary judgment, a party cannot rest on ignorance of the facts, on speculation, or on suspicion and
may not escape summary judgment in the mere hope that something will turn up at trial."  Conaway
v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  The non-moving party "must do more than simply
show that there is some metaphysical doubt as to the material facts."  Biester v. Midwest Health
Servs., Inc., 77 F.3d 1264, 1266 (10th Cir. 1996).

When evaluating a motion for summary judgment, the court examines the factual record and
reasonable inferences therefrom in the light most favorable to the party opposing summary
judgment.  See Sigmon v. CommunityCare HMO, Inc., 234 F.3d 1121, 1124-25 (10th Cir. 2000).
Moreover, the court may consider only admissible evidence when ruling on a motion for summary

judgment.  See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir. 1985)(citing Fed. R. Civ. P. 56(e)).

## LAW REGARDING QUALIFIED IMMUNITY

Qualified immunity recognizes the legitimate "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982)(quoting Butz v. Economou, 438 U.S. 478, 506 (1978)).  Qualified immunity therefore "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must establish: (i) that the defendant violated a constitutional right; and (ii) that the constitutional right violated was clearly established.  See Cortez v. McCauley, 438 F.3d 980, 988 (10th Cir. 2006). "If the plaintiff fails to carry either part of [the] two part burden, the defendant is entitled to qualified immunity." Albright v. Rodriguez, 51 F.3d 1531, 1535 (10th Cir. 1995).  The second part of the plaintiff's burden "must be undertaken in light of the specific context of the case, not as a broad proposition." Saucier v. Katz, 533 U.S. 194, 201 (2001).  "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." Id. at 202.  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).  Finally, in determining whether a defendant is entitled to qualified immunity, a court cannot assume that a

constitutional violation exists; rather, a court must consider the constitutional violation issue before taking up the clearly established issue.  See Kirkland v. St. Vrain Valley School Dist. No. RE-1J, 464 F.3d 1182, 1188-89 (10th Cir. 2006).

In evaluating whether a qualified immunity defense is applicable, the Court will view the evidence in the light most favorable to the non-moving party; however, the record must demonstrate that the plaintiff has satisfied his heavy two-part burden.  See Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).  "Summary judgment based on qualified immunity is appropriate if the law did not put the officer on notice that his conduct would be clearly unlawful."  Cortez v. McCauley, 438 F.3d at 988.  If the plaintiff establishes both a violation of a constitutional right and that the right was clearly established at the time of the alleged conduct, the burden shifts to the defendant, who must demonstrate that there are no genuine issues of material fact and that the defendant is entitled to judgment as a matter of law.  See id.  If there is a factual dispute involving an issue on which qualified immunity turns, summary judgment based on a qualified immunity defense in a 42 U.S.C. § 1983 action is inappropriate.  See Archer v. Sanchez, 933 F.2d 1526, 1533 n1 (10th Cir. 1991).

## LAW REGARDING CONSTRUCTIVE DISCHARGE

The Fourteenth Amendment protects individuals against the deprivation of "life, liberty, or property, without due process of law."  U.S. Const. amend. XIV § 1.  In the employment context, the determination whether a plaintiff has a protected property interest in continued employment is a question of state law.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985); Bailey v. Kirk, 777 F.2d 567, 573 (10th Cir. 1985).  Under New Mexico law, non-probationary public employees, who may only be discharged for good cause and by way of due process grievance procedures, have a constitutionally protected property interest in the right to continued employment.

See Copelin-Brown v. N.M. State Pers. Office, 399 F.3d 1248, 1245 (10th Cir. 2005); City of Albuquerque v. Chavez, 1998-NMSC-033, ¶ 10, 965 P.2d 928, 930; Cockrell v. Bd. of Regents of N.M. State Univ., 1999-NMCA-073, ¶ 3, 983 P.2d 427, 428.

The United States Court of Appeals for the Tenth Circuit has repeatedly held that "an employee's constructive discharge from a position in which the employee has a protectable property interest may be actionable under 42 U.S.C. § 1983." Yearous v. Niobrara County Mem'l Hosp., 128 F.3d 1351, 1355 (10th Cir. 1997)(citing Bailey v. Kirk, 777 F.2d at 579). See Spagnola v. State Bd. of Agric., 13 Fed. Appx. 870, 872 (10th Cir. 2001). "A constructive discharge occurs when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign." Exum v. U.S. Olympic Comm., 389 F.3d 1130, 1135 (10th Cir. 2004). The question is not whether working conditions become difficult or intolerable, but whether, under the circumstances, a reasonable person would have "no other choice but to quit." Lighton v. Univ. of Utah, 209 F.3d 1213, 1222 (10th Cir. 2000)(quoting Yearous v. Niobrara County Mem'l Hosp., 128 F.3d at 1357). On the other hand, "a plaintiff who voluntarily resigns cannot claim that he or she was constructively discharged." Exum v. U.S. Olympic Comm., 389 F.3d at 1135.

The Tenth Circuit has instructed that, "[t]o determine whether a jury question exists as to the voluntariness of [a plaintiff's] resignation[], we consider the totality of the circumstances under an objective standard." Yearous v. Niobrara County Mem'l Hosp., 128 F.3d at 1356. The factors that inform the court's analysis include: "(1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; and (4) whether [the employee] was

-12-

permitted to select the effective date of resignation." Parker v. Bd. of Regents of Tulsa Junior Coll., 981 F.2d 1159, 1162 (10th Cir. 1992). Finally, "offering an employee a choice between resignation and termination does not violate an employee's due process of law, as long as the resignation is 'voluntary.'" Lenz v. Dewey, 64 F.3d 547, 552 (10th Cir. 1995)(quoting Parker v. Bd. of Regents of Tulsa Junior Coll., 981 F.2d at 1162).

## LAW REGARDING FIRST AMENDMENT RETALIATION CLAIMS

The Constitution proscribes "[g]overnment retaliation . . . in as much as retaliatory actions tend to chill individuals' exercise of constitutional rights." How v. City of Baxter Springs, 217 Fed. Appx. 787, 797 (10th Cir. 2007). See Perez v. Ellington, 421 F.3d 1128, 1131 (10th Cir. 2005)("The First Amendment bars retaliation for exercising the right of association."). The United States Court of Appeals for the Tenth Circuit has explained that "any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." How v. City of Baxter Springs, 217 Fed. Appx. at 797 (quoting Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000)).

The Tenth Circuit has characterized it as "well-established that a public employee does not waive all her First Amendment rights by accepting public employment." Deschenie v. Bd. of Educ. of Cent. Consol. Sch. Dist. No. 22, 473 F.3d 1271, 1276 (10th Cir. 2007)(citing Garcetti v. Ceballos, 126 S. Ct. 1951, 1957 (2006)). To determine whether an employer has impermissibly retaliated against an employee for the employee's exercise of his First Amendment rights, courts in the Tenth Circuit apply a four-part test derived from the Supreme Court's opinions in Pickering v. Bd. of Educ., 391 U.S. 563 (1968), and Connick v. Myers, 461 U.S. 138 (1983). See Deschenie v. Bd. of Educ. of Cent. Consol. Sch. Dist. No. 22, 473 F.3d at 1276 (citing Dill v. City of Edmond, 155 F.3d

1193, 1201 (10th Cir. 1998)).

> First, [the] court "must determine whether the employee's speech involves a matter of public concern." Second, if this threshold requirement is satisfied, [the] court then balances "the employee's interest in commenting upon matters of public concern against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Third, if the employee's interest outweighs that of the government, "the employee then must show that the speech was a substantial factor or a motivating factor in the detrimental employment decision." Fourth, if the employee shows the protected speech was a substantial factor, the burden shifts to the employer to show "it would have taken the same action against the employee even in the absence of the protected speech."

Deschenie v. Bd. of Educ. of Cent. Consol. Sch. Dist. No. 22, 473 F.3d at 1276 (quoting Dill v. City of Edmond, 155 F.3d at 1201-02)(internal citations omitted).  The first two matters are questions of law; the second two are questions of fact.  See Gardetto v. Mason, 100 F.3d 803, 811 (10th Cir. 1996).

## LAW REGARDING FIRST AMENDMENT RIGHT TO POLITICAL ASSOCIATION

The First Amendment provides that "Congress shall make no law . . . prohibiting . . . the right of the people peaceably to assemble, and petition the Government for a redress of grievances." U.S. Const. amend. I.  Included among the protections the First Amendment guarantees, the Supreme Court of the United States has recognized "a First Amendment right to associate for the purpose of speaking, which [it has] termed a 'right of expressive association.'"  Rumsfeld v. Forum for Academic & Institutional Rights, Inc., 126 S. Ct. 1297, 1311-12 (2006)(quoting Boy Scouts of Am. v. Dale, 530 U.S. 640, 644 (2000)). See Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 658 (10th Cir. 2006)("In addition to freedom of speech, the First Amendment also implicitly protects the corresponding freedom to expressive association.").  The First Amendment protects associational rights in two distinct ways: (i) it "protects against unjustified government interference with an individual's choice to enter into and maintain certain intimate or private

relationships;" and (ii) it ensures "the freedom of individuals to associate for the purpose of engaging in protected speech or religious activities." Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 537, 544 (1987).  See Grace United Methodist Church v. City of Cheyenne, 451 F.3d at 658.

Because the "[d]iscussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution," the First Amendment affords its "broadest protection to such political expression in order 'to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" Buckley v. Valeo, 424 U.S. 1, 14 (1976)(quoting Roth v. United States, 354 U.S. 476, 484 (1957)).  See Bass v. Richards, 308 F.3d 1081, 1089 (10th Cir. 2002)(quoting Buckley v. Valeo, 424 U.S. at 14).  Specifically, speech related to an individual's assessment of a particular candidate's fitness for public office, or comparing the relative merits of competing candidates, "is at the core of protected speech." Bass v. Richards, 308 F.3d at 1089.  See Gardetto v. Mason, 100 F.3d 803, 812 (10th Cir. 1996)("[T]he advocacy of a particular candidate for public office is the type of core political speech the First Amendment was designed to protect.").  Accordingly, "[i]n light of the importance of political speech to republican government," Nixon v. Shrink Mo. Gov't PAC, 528 U.S. 377, 427 (2000)(Thomas, J., dissenting), when restrictions on "core political speech" are at issue, the Supreme Court has ordinarily evaluated those restrictions under a strict scrutiny standard, Buckley v. Am. Constitutional Law Found., Inc., 525 U.S. 182, 207 (1999)(Thomas, J., concurring in judgment).  See Initiative & Referendum Inst. v. Walker, 450 F.3d 1082, 1099 (10th Cir. 2006)(en banc)(acknowledging that restrictions on political speech trigger strict scrutiny constitutional analysis).

## ANALYSIS

Virden and Sullivan's motion is styled as a "Motion for Qualified Immunity."  Motion for Immunity at 1.  Although the motion asserts that Virden and Sullivan "are entitled to qualified immunity," it does not indicate under which rule of the Federal Rules of Civil Procedure it is invoking the Court's authority, nor specify the relief that Virden and Sullivan seek should the Court agree that qualified immunity bars Jones' claims against them.  In light of the timing of the motion, because of the nature of the arguments that the parties have made in their briefing and their inclusion of affidavits and supplemental evidence outside the pleadings, and because it is clear that the relief Virden and Sullivan desire is for the Court to dismiss the claims against them, the Court has construed the motion as one for summary judgment based on qualified immunity.  Because, however, the Court believes that genuine questions of disputed fact exist regarding whether Virden and Sullivan violated Jones' constitutional rights, and that the law protecting those rights was clearly established at the time the Defendants took their action against Jones, the Court will deny the motion.

## I.   GENUINE ISSUES OF MATERIAL FACT EXIST REGARDING WHETHER VIRDEN AND SULLIVAN VIOLATED JONES' CONSTITUTIONAL RIGHTS.

Jones alleges that he was deprived of due process of law when he was constructively discharged from his job at the Lincoln County Sheriff's Department, and that Virden and Sullivan unlawfully retaliated against him for exercising his rights under the First Amendment.  The Court believes that, based on the record before it, genuine issues of material fact exist regarding whether Jones' constitutional rights were in fact violated.

A.     GENUINE ISSUES OF MATERIAL FACT EXIST REGARDING WHETHER
       JONES WAS CONSTRUCTIVELY DISCHARGED.

Virden and Sullivan do not dispute that Jones had a protectable property interest in continued employment at the Sheriff's Department.  Accordingly, Virden and Sullivan confine their argument to their assertion that Jones was not constructively discharged, and that he voluntarily resigned from his position.  See Motion for Immunity at 7-8.

Jones cannot sustain his constructive discharge claim if he voluntarily resigned.  See Exum v. U.S. Olympic Comm., 389 F.3d at 1135.  To determine whether a jury question exists regarding the voluntariness of Jones' resignation, the Court must employ a totality of the circumstances approach under an objective standard.  See Yearous v. Niobrara County Mem'l Hosp., 128 F.3d at 1356.  In reaching a determination, the Court should consider: (i) whether Jones was given some alternative to resignation; (ii) whether Jones understood the nature of the choice he was given; (iii) whether Jones was given a reasonable time in which to choose; and (iv) whether Jones was permitted to select the effective date of his resignation.  See Parker v. Bd. of Regents of Tulsa Junior Coll., 981 F.2d at 1162.

Jones received formal memoranda or other correspondence alleging misconduct or criticizing his performance on September 8, 2004, October 7, 2004, March 29, 2005, March 31, 2005, June 22, 2005, July 1, 2005, and, after he submitted notice of his resignation, on July 11, 2005.  In his October 7, 2004 letter, Sullivan admitted that he did not interact with Jones during the election process and that he openly supported Virden in the election.   In December 2004, the Sheriff's Department conducted an investigation into a citizen's accusations that Jones had been aggressive and confrontational during an encounter between Jones and the citizen.  The July 1, 2005 letter Virden sent to Jones indicated that the Sheriff's Department intended to suspend Jones for thirty

-17-

days without pay, and that if he chose to appeal the suspension, he would be responsible for one-half of the cost of the appeal.

The Court believes that Jones has presented evidence from which a reasonable jury could conclude that he had been ostracized, criticized, and otherwise treated unfairly after announcing his intention to run against Virden for the position of Sheriff.  Jones represents that he could not afford to bring his suspension to arbitration.  The Court believes that, based on this evidence and applying an objective standard, a reasonable jury could conclude that Jones was subjected "to an escalating pattern of harassment," Jones Affidavit ¶ 13, at 2, and that he had no viable alternative to resignation.

Because the Court believes that a reasonable jury could conclude that Jones had no alternative but to resign from his position at the Sheriff's Department, the Court need not proceed through an examination of the remaining factors that the Tenth Circuit has identified as being relevant to the Court's analysis.  It is enough that the Court believes that genuine issues of material fact exist regarding whether Jones voluntarily resigned or whether, under the circumstances, he had no other choice but to quit.

**B.      GENUINE ISSUES OF MATERIAL FACT EXIST REGARDING WHETHER VIRDEN AND SULLIVAN RETALIATED AGAINST JONES FOR EXERCISING HIS FIRST AMENDMENT RIGHTS.**

To establish a claim of unlawful retaliation under the First Amendment, Jones must demonstrate that: (i) he engaged in speech involving a matter of public concern; (ii) his interest in his expression outweighs the Department's interest in promoting the service it performs; and (iii) his speech was a substantial motivating factor in the detrimental employment decisions Virden and Sullivan took against him.  See Perez v. Ellington, 421 F.3d at 1131-32.  If Jones were to establish

each of these elements, the burden shifts to Virden and Sullivan to establish that they would have taken the same actions against Jones irrespective whether he engaged in protected expression. See id.

The Court believes Jones' participation in the election for Lincoln County Sheriff and his opposition to Virden's candidacy represent political expression and association that the Supreme Court and the Tenth Circuit have identified as being at the core of protected speech. On the other hand, the Court acknowledges that, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 126 S. Ct. 1951, 1960 (2006). For example, had Jones argued that his claim was premised on his reporting Virden for violating the Hatch Act -- an allegation he denies -- his claim might fail because arguably law enforcement officers have an official duty to report violations of the law.

The Court does not believe, however, that the political expression in which Jones engaged was pursuant to his official duties. No particular political affiliation is required for Jones' position as Deputy Sheriff, and it is not plausible that Jones had an official duty to oppose his boss in a political election. Because Jones' First Amendment expression was not pursuant to his official duties, and because the "discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution," Buckley v. Valeo, 424 U.S. at 14, the Court believes that Jones' expression involved a matter of public concern.

Virden and Sullivan have not made any showing that the Lincoln County Sheriff's Department has an interest in restricting employees' political speech that outweighs employees'

-19-

right to engage in political expression and participate in the electoral process.  Virden and Sullivan have not argued that requiring Department employees to subscribe to a uniform political affiliation or suppressing employees' political speech is necessary for the Department to perform its tasks efficiently.  The ability to engage in free political debate is an essential element of a republican government, and Virden and Sullivan have not referenced any competing interest that would outweigh Jones' interest in participating in the political process.

Finally, the Court believes that, based on the record before it, Jones has established a genuine issue of material dispute concerning whether Jones' political expression and association motivated any of Virden's and Sullivan's actions.  Indeed, in his October 7, 2004 letter to Jones, Sullivan responded to the allegation that management personnel had ostracized Jones and admitted that he did not communicate with Jones during the primary election process, because "[a]ny constructive criticism would have been misconstrued as retaliation for running against Mr. Virden, who I openly supported."  Sullivan's October 7, 2004 Letter at 1.  The Court notes that, in the context of a qualified immunity motion, "[a] disputed fact that would preclude summary judgment would be one which relates to the alleged conduct or motive."  Archer v. Sanchez, 933 F.2d at 1533 n.1.

In sum, the Court concludes that Jones has established that material issues of fact exist regarding whether Jones was constructively discharged, and whether Virden and Sullivan unlawfully retaliated against him for exercising his First Amendment rights.  The Court believes that, unless the law regarding constructive discharge and First Amendment retaliation was unclear at the time Virden and Sullivan took the alleged actions against Jones, summary judgment based on qualified immunity is inappropriate.

**II.**   **THE LAW ON CONSTRUCTIVE DISCHARGE AND FIRST AMENDMENT RETALIATION WAS FIRMLY ESTABLISHED AT THE TIME VIRDEN AND SULLIVAN TOOK THE ALLEGED ACTIONS AGAINST JONES.**

Because the Court has concluded that Jones established a genuine issue of material fact regarding whether Virden and Sullivan violated his constitutional rights, the Court must evaluate whether the law regarding those rights was clearly established at the time Virden and Sullivan acted against Jones.  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  Medina v. City and County of Denver, 960 F.2d at 1498.

Virden and Sullivan do not argue that the law regarding constructive discharge is not clearly established, but merely assert that they "are unaware of any Tenth Circuit authority holding that a resignation under the circumstances [Jones] alleges in this case was involuntary so as to trigger due process considerations."  Motion for Immunity at 7.  Virden and Sullivan contend that "even taking [Jones'] allegations as true, they are not sufficient to deem [his] resignation involuntary."  Id. at 8.  Because Virden and Sullivan express awareness of the applicable law, and because the Court has already determined that, based on the evidence Jones has presented, a reasonable jury could conclude that his resignation was involuntary, the Court believes that summary judgment is inappropriate on Jones' constructive discharge claim.

Virden and Sullivan also do not allege that the law regarding First Amendment retaliation is not clearly established in the employment context.  See id. at 6.  Rather, Virden and Sullivan confine their argument to their assertion that Jones has failed to present evidence sufficient to establish two of the required elements of a prima facie case of retaliation under the First Amendment

-- that his speech was a matter of public concern and that his speech was a motivating factor in the action taken against him.  See id.  The Court has already concluded, however, that Jones' speech involved a matter of public concern and that he has established a genuine issue of material dispute concerning whether his political expression and association motivated any of Virden's and Sullivan's actions.  More important, with regard to Jones' First Amendment claims, there is a Tenth Circuit case on point.

In Bass v. Richards, the Tenth Circuit affirmed a district court's denial of summary judgment premised on an assertion of qualified immunity.  The defendants in Bass v. Richards included a county sheriff and undersheriff who took detrimental employment action against the plaintiff, a subordinate in the Sheriff's Department, because of the plaintiff's support for the candidacy and political philosophy of an individual running against the sheriff in upcoming county elections.  See 308 F.3d at 1085.  In ruling that the applicable law was clearly established, the Tenth Circuit explained that the plaintiff's "expression of his preference for one [political] philosophy over another is the type of pure political opinion that has been long protected."  Id. at 1090.  Because of the long history of protection for political speech, the Tenth Circuit concluded that a reasonable official would understand that taking detrimental action "based on [the plaintiff's] expressed preference for one individual's philosophy over another and his assessment of [the] campaign violated [the plaintiff's] free speech rights."  Id.

Given that Virden and Sullivan express awareness of the applicable law, and because there is a Tenth Circuit case on point, the Court concludes that the law was clearly established at the time they took action against Jones.  Because the law was clearly established and because the Court has already determined that Jones has established a genuine issue of material dispute concerning whether

Jones' political expression and association motivated any of Virden's and Sullivan's actions, the Court believes that summary judgment based on qualified immunity is inappropriate on Jones' First Amendment retaliation claim.

**IT IS ORDERED** that the Defendants' Motion for Qualified Immunity and Stay of Proceedings is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

J. Robert Beauvais
J. Robert Beauvais, P.A.
Ruidoso, New Mexico

     *Attorney for the Plaintiff*

Carlos M. Quinones
Quinones Law Firm
Santa Fe, New Mexico

-- and --

Martin R. Esquivel
Narvaez Law Firm, P.A.
Albuquerque, New Mexico

     *Attorneys for the Defendants*